UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RICHARD MONTANEZ,

       Plaintiff,

v.                     Case No. 8:13-cv-3217-T-33TBM

CHRIS CELAYA, ET AL.,

       Defendants.

_____/

## ORDER

This cause comes before the Court pursuant to Defendants Chris Celaya, Michael Baran, Jason Runkles, and Keith Powell's Motion to Dismiss (Doc. # 35), filed on August 7, 2014. Plaintiff Richard Montanez filed a Response in Opposition to the Motion on August 21, 2014. (Doc. # 40). For the reasons that follow, the Court grants the motion in part and denies the motion in part.

## I.   Background

On February 21, 2011, Tampa police officers Celaya, Baran, Runkles and Powell went to Montanez's Tampa, Florida apartment "for the purpose of arresting him for the alleged theft of a cellphone from a Walmart store on February 14, 2011." (Doc. # 33 at ¶ 7). The Officers did not have an arrest warrant. (Id. at ¶ 8). Montanez's apartment was

located on the second floor of his apartment complex and had two doors: an outer screen door and an inner door. (Id. at ¶¶ 9-10, 12). The outer screen door lead to a furnished, screened-in porch. (Id.).

At the time of the incident, "[t]he outer door was closed but was transparent [and] . . . screened" while "the inner door was open." (Id. at ¶¶ 13-14). According to Montanez:

> Defendant Baran knocked on the outer door . . . . Plaintiff, who was inside his apartment and talking on his telephone, heard the knocking on the outer door and went to the inner door so that he could view who was knocking on the outer door. Plaintiff did not go onto the porch. Defendant looked through the closed screen door, observed Plaintiff standing in his apartment immediately next to his open door and asked "Are you Richard?"  Plaintiff, while standing in his apartment, responded "Yes, I am." After Plaintiff acknowledged to Defendant Baran that he was "Richard," Baran then, without express or implied invitation and without exigent circumstances quickly opened the outer door and rushed across the 6 to 8 foot porch area between the outer door and the inner door, followed by Defendant Keith Powell. . . . Defendants Baran and Powell then forcefully pulled Plaintiff from the interior of his apartment onto the porch and knocked him to the ground.  While Defendants Baran and Powell were forcefully and offensively grabbing Plaintiff, Defendants Celaya and Runkles entered the porch.

(Id. at ¶¶ 22-33).

Once Montanez was snatched from the interior of his home and thrown, face-first, on the floor of his porch, the Defendant Officers beat Montanez until he was unconscious and

arrested him. (Id. at ¶¶ 34-39). Specifically, Officer Celaya struck Montanez in the nose with his knee, Officer Powell struck Montanez in the thigh with his knee, Officer Powell delivered two closed fist strikes to Montanez's shoulder, Officer Powell broke his finger while striking Montanez, and some or all of the Defendants kicked and punched Montanez while he was face down on the ground and unconscious. (Id.). Montanez describes himself as "a relatively small man [standing] 5ft. 1 inch tall and weigh[ing] 148 pounds;" at the time of the incident he was unarmed, posed no threat to the Defendants, and did not attempt to flee. (Id. at ¶¶ 29-30).

In addition, at least one of the officers, Powell, allegedly searched Montanez's apartment without an arrest warrant, search warrant, or exigent circumstances. (Id. at ¶¶ 8, 40). After Montanez was "handcuffed," "taken to jail" and "put into the general prison population," "all criminal charges were dismissed." (Id. at ¶¶ 44-45).

On August 5, 2014, Montanez initiated a twelve count Amended Complaint against Defendants, alleging, inter alia, that "Defendants, while acting under color of state law in entering his dwelling without permission and beating and arresting Plaintiff unlawfully, deprived Plaintiff of his

right to be free from unreasonable search and seizures guaranteed under the 4th Amendment of the Constitution of the United States made applicable to the states through the 14th Amendment." (<u>Id.</u> at ¶ 43).   In addition to asserting that Defendants violated the Fourth Amendment through the vehicle of 42 U.S.C. § 1983 (Counts One through Four), Montanez asserts that Defendants falsely imprisoned him under state law (Counts Five through Eight) and failed to intervene to prevent harm to Montanez (Counts Nine through Twelve). Montanez seeks a judgment against each Defendant in the amount of $250,000 for a total of $1,000,000, an award of reasonable attorney's fees, and a jury trial. (<u>Id.</u>).

Defendants seek the dismissal of Montanez's suit on a number of grounds, including Rule 12(b)(6), Fed. R. Civ. P., and raise the defenses of qualified immunity and sovereign immunity.

## II.   <u>Legal Standard</u>

### A.   <u>Qualified Immunity</u>

"Qualified immunity shields government officials from liability for civil damages for torts committed while performing discretionary duties unless their conduct violates a clearly established statutory or constitutional right." <u>Hadley v. Gutierrez</u>, 526 F.3d 1324, 1329 (11th Cir. 2008).

"Because qualified immunity is an entitlement not to stand trial or face other burdens of litigation, questions of qualified immunity must be resolved at the earliest possible stage in litigation." Gonzalez v. Reno, 325 F.3d 1228, 1233 (11th Cir. 2003)(internal citations omitted).    "While qualified immunity is typically addressed at the summary judgment stage of the case, the defense may be raised and considered on a motion to dismiss." Chesser v. Sparks, 248 F.3d 1117, 1121 (11th Cir. 2001).

To receive qualified immunity, a government official must first establish that he acted within his discretionary authority. Powell v. Sheriff, Fulton Cnty. Ga., 511 F. App'x 957, 960 (11th Cir. 2013). A "discretionary duty" means conduct that furthers an official obligation and falls within the scope of an official's authority. Harbert Int'l, Inc. v. James, 157 F.3d 1271, 1282 (11th Cir. 1998).  If an act occurs within the defendant's discretionary authority, the plaintiff bears the burden of overcoming qualified immunity. See Rushing v. Parker, 599 F.3d 1263, 1265 (11th Cir. 2010).  To overcome qualified immunity, the plaintiff must show: (1) the facts alleged within the complaint constitute a violation of his constitutional rights, and (2) the constitutional rights were "clearly established" when the defendant committed the

act complained of. Pearson v. Callahan, 555 U.S. 223, 232 (2009). A qualified-immunity inquiry can begin with either prong; neither is antecedent to the other. Id. at 236. See also Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2080 (2011).

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [police officer] that his conduct was unlawful in the situation he confronted." Loftus v. Clark-Moore, 690 F.3d 1200, 1204 (11th Cir. 2012). "Qualified immunity gives ample room for mistaken judgments but does not protect the plainly incompetent or those who knowingly violate the law." Gonzalez v. Butts County, 522 F. App'x 742, 747 (11th Cir. 2013).

A right can be considered "clearly established" if, in light of preexisting law, the unlawfulness of the official's conduct is "apparent." Cooper v. Dillon, 403 F.3d 1208, 1220 (11th Cir. 2005). Thus, an official is entitled to qualified immunity unless the official has fair warning that his conduct is unlawful. Id. The Eleventh Circuit has identified three categories of fair warning:

> First, . . . whether the federal statute or constitutional provision is so clear, and the conduct is so bad, that it precludes qualified immunity even in the total absence of case

> law.  Second, if the conduct is not bad enough
> that it violates a constitutional provision on
> its face, [a court] look[s] to case law that
> can be applied broadly to a number of factual
> situations.  Third, and finally, if no broad
> case law is applicable, [the court] turns to
> case law precedent that is tied to the facts.

Kesinger v. Herrington, 381 F.3d 1243, 1250 n.6 (11th Cir. 2004).

As stated by the Eleventh Circuit, "For qualified immunity to be surrendered, pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what the defendant is doing violates federal law in the circumstances." Lassiter v. Ala. A & M Univ., 28 F.3d 1146, 1150 (11th Cir. 1994). Further, the Eleventh Circuit has warned that "courts must not permit plaintiffs to discharge their burden by referring to general rules and to the violation of 'abstract rights.'" Id.; Hunter v. City of Warner Robins, Ga., 842 F. Supp. 1460, 1469 (M.D. Ga. 1994)("Unless it can be said that the state of the law was of such clarity that a reasonable official should have been on notice that his or her challenged conduct was unlawful, that official is entitled to qualified immunity.").

**B.    Motion to Dismiss for Failure to State a Claim**

On a motion to dismiss, this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, this Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990) ("On a motion to dismiss, the facts stated in [the] complaint and all reasonable inferences therefrom are taken as true."). However, the Supreme Court explains that:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)(internal citations omitted). Further, courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

In accordance with Twombly, Federal Rule of Civil Procedure 8(a) calls "for sufficient factual matter, accepted

as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 663 (2009) (quoting <u>Twombly</u>, 550 U.S. at 570). A plausible claim for relief must include "factual content [that] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u>

## III. **Analysis**

### A. **Fourth Amendment**

In Counts One through Four of the Amended Complaint, Montanez seeks relief for undifferentiated violations of the Fourth Amendment as to Officers Celaya, Baran, Runkles, and Powell, respectively. Montanez's Amended Complaint asserts that Defendants violated the Fourth Amendment in effecting his arrest and that Defendants used excessive force during the arrest. In addition, Montanez alleges that Officer Powell unlawfully entered Montanez's apartment without a warrant and conducted an illegal search.

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . ." U.S. Const. amend. IV. "An arrest is quintessentially a seizure of a person, and therefore subject to the Fourth Amendment's reasonableness requirement." <u>McClish v. Nugent</u>,

483 F.3d 1231, 1238 (11th Cir. 2007). "[A]n arrest conducted in a public place must be supported by probable cause, but it does not require a warrant.  An arrest in the home, however, is plainly subject to the warrant requirement; probable cause alone is insufficient." Id. (internal citations omitted). In addition, "the Supreme Court unambiguously held that the Fourth Amendment prohibits the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest." Id. (internal citation omitted).  Furthermore, "under the Fourth Amendment, warrantless searches inside a home are 'presumptively unreasonable.'" Walters v. Freeman, No. 13-14407, 2014 U.S. App. LEXIS 13540, at *9 (11th Cir. July 16, 2014)(citing Brigham City v. Stuart, 547 U.S. 398, 403 (2006)).

In addition, "the Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest." Lee v. Ferraro, 284 F.3d 1188, 1197 (11th Cir. 2002).  "Under this Circuit's law, however, a claim that any force in an illegal . . . arrest is excessive is subsumed into the illegal . . . arrest claim and is not a discrete excessive force claim." Jackson v. Sauls, 206 F.3d 1156, 1171 (11th Cir. 2000); see also Williamson v. Mills, 65 F.3d 155,

158 (11th Cir. 1995)(holding that a claim that any force during a false arrest is excessive is subsumed into the false arrest claim itself because damages for false arrest include damages for use of force to effect that false arrest); accord Motes v. Myers, 810 F.2d 1055, 1059 (11th Cir. 1987)("it is obvious that if the jury finds the arrest unconstitutional, the use of force and the search were unconstitutional and they become elements of the damages for the § 1983 violation.").

### B. Unlawful Home Entry

Although four officers are named as Defendants in the Amended Complaint, Montanez alleges that it was Officers Baran and Powell who reached into Montanez's home and pulled Montanez out of his home in order to effect his arrest.  As explained below, this conduct violates the Fourth Amendment, and at the time of Montanez's arrest, it was clearly established law. Thus, the Court determines that Officers Baran and Powell are not entitled to qualified immunity at this juncture concerning their entry into Montanez's home to effect his arrest or at any time thereafter.

In contrast, Montanez alleges that Officers Celaya and Runkles entered his porch without his consent and thereafter participated in arresting him.  As discussed below, Montanez

11

has not demonstrated that Officers Celaya and Runkles' entry onto Montanez's porch to effect his arrest violated clearly established law.   Thus, Officers Celaya and Runkles are entitled to qualified immunity based on the facts alleged in the Amended Complaint.

In reaching the determination that Officers Baran and Powell are not entitled to qualified immunity at this juncture concerning their entry into Montanez's home, the Court draws upon the factually apposite case of McClish v. Nugent, 483 F.3d 1231 (11th Cir. 2007).   In that case, neighbors complained that McClish stalked them, made death threats, and fired gunshots across the property line. Id. at 1234.  Police officers responded in person to the neighbors' concerns and observed activity by McClish that the police officers considered to be aggravated stalking. Id.  The police officers did not arrest McClish at that time and did not obtain a warrant. Id.  Rather, six hours later, the police officers went to McClish's home, entered the screened porch, and then knocked on the door to the home. Id.  McClish alleged that he answered the door in his bathrobe and that a police officer "reached into the house, grabbed him, and forcibly pulled him out onto the porch." Id. at 1235-36.   McClish, who was seventy-five years old at the time, alleged that he was

arrested "quite forcibly." Id. at 1236.  The charge against McClish was later dismissed.  Thereafter, McClish sued the police officers for "unreasonable warrantless arrest under the Fourth Amendment," false arrest, and other claims. Id.

Evaluating qualified immunity issues, the Eleventh Circuit held that the police officer who pulled McClish from his home violated the Fourth Amendment when he entered McClish's home, even for a brief moment to drag him onto the porch, because he lacked a warrant, consent, or exigent circumstances.  However, the Eleventh Circuit found that the police officer in question was entitled to qualified immunity because, at the time of McClish's arrest, the law was not clearly established.

In deciding the McClish case, the Eleventh Circuit set forth the following analysis:

> McClish did not completely surrender or forfeit every reasonable expectation of privacy when he opened the door, including, most notably, the right to be secure within his home from a warrantless arrest.  The fact that a person answers a knock at the door doesn't mean he agrees to let the person who knocked enter. . . . Simply put, the fact that an officer may view a subject in the interior of a home through an open door does not alter the basic rule that a warrantless entry into the home to effect an arrest is prohibited absent consent or exigent circumstances. . . . [In] Payton, [the Court] set forth a bright-line rule: warrantless intrusions beyond the "zone of privacy" delimited by the

> threshold are presumptively unreasonable. Because [the police] crossed Payton's firm line and physically hauled McClish out of his home, the arrest was unlawful. The fact that McClish opened the door does not vitiate the warrant requirement when, as here, McClish remained entirely within the home. McClish neither consented to the arrest (indeed, by his account, he was not given the opportunity to consent), nor were there exigent circumstances involved. In the absence of a warrant, McClish's arrest was, therefore, presumptively unreasonable and in violation of his Fourth Amendment right to be secure in his home.

Id. at 1248 (citing Payton v. N.Y., 445 U.S. 573 (1980)).

It was appropriate for the court to cloak the arresting officer in qualified immunity in McClish because, at the time of the incident, there had not yet been a clear pronouncement of the law by the Supreme Court or the Eleventh Circuit. The court noted, "if judges thus disagree on a constitutional question, it is unfair to subject police to money damages for picking the losing side of the controversy." Id. at 1249 (internal citation omitted).

In the present case, Montanez contends that, absent consent, a warrant, or exigent circumstances, he was extracted from the confines of his home by Officers Baran and Powell and thrust upon the floor of the porch, where he was forcibly arrested. Under McClish, officers Baran and Powell

14

violated Montanez's Fourth Amendment rights.[1]  In addition, because McClish explained in exacting detail the Fourth Amendment's requirements for entry into a home to effect an arrest, the Court finds that the law was clearly established at the time of Montanez's arrest. See also Payton, 445 U.S. at 585 ("[T]he physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed."); Bashir v. Rockdale Cnty., Ga., 445 F.3d 1323, 1331 (11th Cir. 2006)(entering a home "without a warrant, exigent circumstances, or consent" violates "clearly established Fourth Amendment precedent."); Riggs v. State, 918 So. 2d 274, 278-79 (Fla. 2005)(Warrantless entry into a home without "the sort of emergency or dangerous situation, described in our cases as 'exigent circumstances,'" is unjustified.).

Accordingly, Montanez has overcome qualified immunity as to Officers Baran and Powell concerning the allegation that they violated the Fourth Amendment by entering Montanez's home absent a warrant, consent, or exigent circumstances.

---

[1]  Neither Montanez nor Defendants dispute that Officers Celaya, Baran, Powell, and Runkles were acting within their discretionary authority with respect to Montanez's Fourth Amendment claims.

The Court reaches a different result for Officers Celaya and Runkles.  The Amended Complaint does not allege that Officers Celaya and Runkles entered into Montanez's home, rather the Amended Complaint alleges that these Officers entered Montanez's screened porch and thereafter participated in his arrest.  In Coffin v. Brandau, 642 F.3d 999, 1012 (11th Cir. 2011), the court held, "It is well-established that police officers can enter onto residential property, including portions that would be considered part of the curtilage, in order to carry out legitimate police business."

In determining what constitutes "curtilage," courts consider "the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by." United States v. Dunn, 480 U.S. 294, 301 (1987). Police officers can enter private property, even the curtilage, to conduct legitimate police business or to go where the public would be expected to go. Coffin, 642 F.3d at 1012.  This includes "walkways, driveways, [and] porches." Id.  In the Eleventh Circuit, the determination of what area constitutes curtilage is a

question of fact.  <u>United States v. Berrong</u>, 712 F.2d 1370, 1374 (11th Cir. 1983).[2]

Even assuming that the porch in this case was curtilage, that the porch was entitled to some Fourth Amendment protection, and that Officers Celaya and Runkles violated the Fourth Amendment by their entry into the porch, Montanez has not shown that the Officers Celaya and Runkles violated a clearly established law.  Rather than a brightline rule, the four-factor test that courts use to determine what constitutes curtilage is fact-specific.  Unlike the sacred, protected threshold of a home, the boundaries of curtilage are subject to interpretation and are not as easy to define.  When it comes to a screened in porch, reasonable minds could disagree as to whether it should be afforded Fourth Amendment protection under the facts in question.  The Court thus determines that Officers Celaya and Runkles are entitled to

---

[2] The Court acknowledges that the Supreme Court has recently stated: "The front porch is the classic exemplar of an area adjacent to the home and to which the activity of home life extends." <u>Fla. v. Jardines</u>, 133 S. Ct. 1409, 1414 (2013). That case decided in the affirmative the unrelated issue of whether "the government's use of trained police dogs to investigate the home and its immediate surroundings is a 'search' within the meaning of the Fourth Amendment." <u>Id.</u> at 1417-18.  Notably, that case was decided in 2013, and the arrest in the present case occurred in 2011.

qualified immunity to the extent that Montanez seeks relief for their entry onto his porch to effect his arrest. Accordingly, Counts One and Three of the Complaint, asserted against Officers Celaya and Runkles, are dismissed.

### C. **Excessive Force and Failure to Intervene**

As previously noted, when a plaintiff asserts an excessive force claim in conjunction with a false arrest claim, the excessive force claim is subsumed into the false arrest claim.  However, the plaintiff may bring a separate cause of action for failure to intervene.  An officer has a duty to intervene to stop the use of excessive force if: (1) he is in a position to do so and (2) refuses to do so. Priester v. City of Riviera Beach, Fla., 208 F.3d 919, 924-25 (11th Cir. 2000).  The Eleventh Circuit does not recognize a duty to intervene in constitutional violations which occur outside of the excessive force context. Jones v. Cannon, 174 F.3d 1271, 1286 (11th Cir. 1999). However, "if a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence, the officer is directly liable." Ensley v. Soper, 142 F.3d 1402, 1407-08 (11th Cir. 1998).

Among other arguments, Defendants assert that they could not anticipate and intervene to stop the use of force because "the allegations in paragraphs 33 through 38 [of the Amended Complaint] suggest a contemporaneous and collective effort to take the Plaintiff into custody." (Doc. # 35 at 13). Defendants further argue:

> [T]he allegations do not allow this Court to reasonably infer that Defendants Baran, Celaya, and Runkles were aware, or had reason to anticipate, that Defendant Powell was going to knee the Plaintiff once in his thigh. The allegations do not allow the Court to reasonably infer that Defendants Baran, Powell and Runkles knew, or could have anticipated that Defendant Celaya was going to knee the Plaintiff once in the nose. The allegations do not allow the Court to reasonably infer that Defendants Baran, Celaya or Runkles knew, or could anticipate that Officer Powell was going to strike the Plaintiff twice on the shoulder.

(Doc. # 35 at 13).[3]

---

[3] Defendants' Motion to Dismiss does not assert that Defendants are entitled to qualified immunity to Montanez's failure to intervene claims asserted in Counts Nine through Twelve of the Amended Complaint. Notably, the Eleventh Circuit has held in several cases that particularized case law is not required to overcome a claim of qualified immunity in a failure to intervene cause of action. Priester, 208 F.3d at 927. "A police officer's duty to intervene when he witnesses the use of excessive force and has the ability to intervene was clearly established prior to 2006." Bailey v. City of Miami Beach, No. 10-20998, 2011 U.S. Dist. LEXIS 93974, at *26 (S.D. Fla. Aug. 23, 2011).

The Court has evaluated numerous cases in which a duty to intervene was not found.  For instance, in <u>Ensley</u>, the court explained that a defendant police officer did not have a duty to intervene when other police officers were beating the plaintiff because, at the relevant time, the defendant officer was attempting to restrain another armed attacker. 142 F.3d at 1407; <u>see also</u> <u>Riley v. Newton</u>, 94 F.3d 632, 635 (11th Cir. 1996)(an officer who was engaged in arresting a suspect and who did not observe his fellow officer's use of excessive force on a second suspect did not have a duty to intervene). In this case, there were no other suspects or criminal activity upon which the Defendants were focused. Instead, the Amended Complaint alleges that Defendants collectively beat Montanez into submission on his front porch.

This case is also unlike <u>Hadley v. Gutierrez</u>, 526 F.3d 1324 (11th Cir. 2008).  There, defendant police officers Ortivero and Gutierrez responded to a report that a man high on cocaine, Hadley, was ransacking a Publix grocery store. <u>Id.</u> at 1327. "Hadley neither resisted arrest nor posed a danger to Officer Ortivero;" nevertheless, Officer Ortivero delivered a punch to Hadley's stomach. <u>Id.</u> at 1330. "Officer Ortivero's single punch constituted excessive force" but

20

"Officer Gutierrez's inaction . . . is a different story."
Id. Because Officer Ortivero delivered a single unprovoked
blow to Hadley, the court indicated that "Hadley presented no
evidence from which a reasonable jury could find that
Gutierrez could have anticipated and then stopped Ortivero
from punching Hadley once in the stomach." Id. at 1331.
Rather than a single blow, as described in Hadley, Montanez
asserts that Defendants continuously and collectively beat
him, such that he was rendered unconscious.

Velazquez v. City of Hialeah, 484 F.3d 1340 (11th Cir.
2007), is also instructive on the issue of whether Defendants
failed to intervene in this case. There, the plaintiff was
arrested for driving under the influence and alleged that he
was beaten while handcuffed. Two police officers were
involved, but the plaintiff could not prove which of the
officers delivered the damaging blows because, presumably
face down, the plaintiff "did not see who beat him." Id. at
1342. In reversing the district court's grant of qualified
immunity, the Eleventh Circuit explained that "an officer who
is present at the scene and who fails to take reasonable steps
to protect the victim of another officer's use of excessive
force, can be held liable for his nonfeasance." Id. at 1341-
42. Furthermore, the court "expressly rejected the argument

that the force administered by each defendant in a collective beating must be analyzed separately to determine which of the defendants' blows, if any, used excessive force." Id. (citing Skrtich v. Thornton, 280 F.3d 1295, 1302 (11th Cir. 2002)).

The Eleventh Circuit also noted that, if officers could justify collective acts of police brutality based on the plaintiff's failure to identify which officers administered which blows, "all police officers would have to do to use excessive force on an arrestee without fear of consequence would be to put a bag over the arrestee's head and administer the beating in silence." Id. at 1342. The court further remarked:

> Velazquez alleged that two officers were present when he was subjected to a beating while handcuffed. He has named the two officers in his complaint. They have admitted being present. Velazquez's allegations, taken in the light most favorable to him . . . create a triable issue of fact as to whether one or both of the officers used excessive force upon him, and whether one or the other failed to intervene to stop the use of such force.

Id.

Here, Montanez contends that "[e]ach of the four Defendants was in a position to intervene because the photos of the porch attached to the Complaint show it was a relatively small area, and in this relatively small area were

located the four Defendants and the Plaintiff. . . . [T]he victim is a 5ft 1 inch 148 pound man who was alone in his apartment when the incident occurred, who made no effort to escape and who presented no threat to the officers." (Doc. # 40 at 13).

At this preliminary juncture, the Court determines that Montanez has stated a cause of action for failure to intervene as to each of the Defendants.  He has alleged that each of the Defendants beat him, including kneeing his nose, kneeing his thigh, striking his shoulder, and kicking and punching him "while face down on the ground." (Doc. # 33 at ¶¶ 34-38). These allegations, viewed in the light most favorable to Montanez, sufficiently allege a cause of action for failure to intervene as to each Defendant.  The Court accordingly denies the Motion to Dismiss as to Counts Nine through Twelve of the Amended Complaint.

### D.   State Law Claims for False Imprisonment

"False imprisonment is the unlawful restraint of a person against his will, the gist of which action is the unlawful detention of the plaintiff and deprivation of his liberty." Johnson v. Weiner, 19 So. 2d 699, 171 (Fla. 1944); accord Spears v. Albertson's, Inc., 848 So. 2d 1176, 1177 (Fla. 1st DCA 2003). In Florida, false imprisonment and false

arrest are different labels for the same cause of action. <u>Id.</u> at 1178.

Florida Statute § 768.28(9)(a) provides limited statutory immunity to police officers for state tort claims as follows:

> No officer, employee, or agent of the state or any of its subdivisions shall be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, unless such officer . . . acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

Fla. Stat. § 768.28(9)(a); <u>Brivik v. Law</u>, 545 F. App'x 804, 807 (11th Cir. 2013)("in Florida, police officers are immune from suit unless they acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.").

Defendants contend that they acted within the scope of their employment by making an arrest for a violation of Florida law. (Doc. # 35 at 8-10). Defendants also argue that the alleged facts do not demonstrate that Defendants acted in bad faith, with malicious purpose, or with willful and wanton disregard for Montanez's rights under Fla. Stat. § 768.28(9). (<u>Id.</u>).

Montanez counters that "[t]he Complaint, with inference drawn there from the most favorable to Plaintiff suggests that a willful disregard for human rights occurred when the Plaintiff, a tiny man, was pulled from his apartment, beaten and arrested and detained against his will illegally." (Doc. # 40 at 12).

The Court denies the Motion to Dismiss as to the state law false arrest claim asserted against each of the Defendants.  It is not disputed that making arrests for violations of Florida law is within the course and scope of Defendants' employment as police officers. See Hill v. Dekalb Reg'l Youth Detention Ctr., 40 F.3d 1176, 1185 n.17 (11th Cir. 2004)("A government official acts within his or her discretionary authority if objective circumstances compel the conclusion that challenged actions occurred in the performance of the official's duties and within the scope of this authority."); Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002)(finding that an officer was acting within his discretionary capacity when he decided to arrest the plaintiff.). However, at this stage of the proceedings, and evaluating the facts in the light most favorable to Montanez, the Court determines that the Amended Complaint contains allegations rising to the level of bad faith or willful and

wanton disregard for Montanez's safety and human rights. Accordingly, the Court denies the Motion to Dismiss as to Counts Five through Eight of the Amended Complaint.

Accordingly, it is

**ORDERED**, **ADJUDGED**, and **DECREED**:

Defendants' Motion to Dismiss Amended Complaint (Doc. # 35) is **GRANTED** in part and **DENIED** in part. Specifically, the Motion to Dismiss is granted as to Counts One and Three, and is otherwise denied.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 8th day of September, 2014.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All Counsel of Record